## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN TRAIN DISPATCHERS ASSOCIATION, 4239 West 150th Street Cleveland, OH 44135,<br><br>and<br><br>BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, a Division of the Rail Conference of the International Brotherhood of Teamsters, 7061 East Pleasant Valley Road Independence, OH 44131,<br><br>and<br><br>BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, 20300 Civic Center Drive, Suite 320 Southfield, MI 48076<br><br>and<br><br>BROTHERHOOD OF RAILROAD SIGNALMEN, 917 Shenandoah Shores Road Front Royal, VA 22630,<br><br>and<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, 9000 Machinists Place | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No:  1:20-cv-2139 |

Upper Marlboro, MD 20772,                    )
                                             )
and                                          )
                                             )
INTERNATIONAL ASSOCIATIONS                   )
OF SHEET METAL, AIR, RAIL AND                )
TRANSPORTATION WORKERS,                      )
MECHANICAL DIVISION,                         )
1750 New York Avenue, Suite 600              )
Washington, DC 20006                         )
                                             )
and                                          )
                                             )
INTERNATIONAL ASSOCIATION                    )
OF SHEET METAL, AIR, RAIL                    )
AND TRANSPORTATION                           )
WORKERS, TRANSPORTATION                      )
DIVISION,                                    )
24950 Country Club Blvd., Suite 340          )
North Olmstead, OH 44070,                    )
                                             )
and                                          )
                                             )
INTERNATIONAL BROTHERHOOD                    )
OF BOILERMAKERS,                             )
753 State Ave.                               )
Kansas City, KS 66101,                       )
                                             )
and                                          )
                                             )
INTERNATIONAL BROTHERHOOD                    )
OF ELECTRICAL WORKERS,                       )
900 7th St NW                                )
Washington, DC 20001,                        )
                                             )
and                                          )
                                             )
NATIONAL CONFERENCE                          )
OF FIREMAN & OILERS DISTRICT,                )
LOCAL 32BJ, SEIU,                            )
1212 Bath Avenue, Floor F&O                  )
Ashland, KY 41101,                           )
                                             )

and                                          )
                                             )
TRANSPORTATION                               )
COMMUNICATIONS UNION/IAM,                     )
3 Research Place                             )
Rockville MD, 20850-3279,                    )
                                             )
and                                          )
                                             )
TRANSPORT WORKERS UNION,                      )
501 3rd Street, NW, 9th Floor                )
Washington, DC 20001,                        )
                                             )
                         Plaintiffs,         )
                                             )
v.                                           )
                                             )
NATIONAL RAILWAY LABOR                        )
CONFERENCE,                                   )
251 18th Street, South                       )
Arlington, VA 22202                          )
                                             )
and                                          )
                                             )
BNSF RAILWAY COMPANY,                         )
2500 Lou Menk Drive                          )
Fort Worth, TX 76102                         )
                                             )
and                                          )
                                             )
THE KANSAS CITY SOUTHERN                      )
RAILWAY COMPANY,                              )
427 W. 12th Street                           )
Kansas City, MO  64105,                      )
                                             )
and                                          )
                                             )
CSX TRANSPORTATION, INC.,                     )
500 Water Street                             )
Jacksonville, FL 32202-4465,                 )
                                             )

3

and                                        )
                                           )
GRAND TRUNK WESTERN                        )
RAILROAD COMPANY,                          )
d/b/a CANADIAN NATIONAL                     )
RAILWAY,                                    )
17641 South Ashland Ave.                    )
Homewood, IL  60430,                        )
                                           )
and                                        )
                                           )
NORFOLK SOUTHERN RAILWAY                    )
COMPANY,                                    )
Three Commercial Place                      )
Norfolk, VA 23510-2191                      )
                                           )
and                                        )
                                           )
SOO LINE RAILROAD COMPANY,                  )
d/b/a CANADIAN PACIFIC                      )
RAILWAY,                                    )
120 S 6th Street, Suite 900                 )
Minneapolis, MN, 55402-1812                 )
                                           )
and                                        )
                                           )
UNION PACIFIC RAILROAD                      )
COMPANY,                                    )
1400 Douglas Street, STOP 0710              )
Omaha, NE  68179                            )
                                           )
                    Defendants.            )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs American Train Dispatchers Association, the Brotherhood of

Locomotive Engineers and Trainmen, the Brotherhood of Maintenance of Way Employes,

the Brotherhood of Railroad Signalmen, International Association of Machinists and

4

Aerospace Workers, International Association of Sheet Metal, Air, Rail and Transportation Workers, Mechanical Division, International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division, the International Brotherhood of Boilermakers, International Brotherhood of Electrical Workers, the National Conference of Fireman & Oilers District, Local 32BJ, SEIU, the Transportation Communications Union/IAM, and the Transport Workers Union (collectively "the Unions") represents all of the rail unions currently engaged in collective bargaining with the Nation's national freights and bring this action for declaratory and injunctive relief in order to enforce the Unions' rights under the Railway Labor  Act ("RLA"), 45 U.S.C. § 151, *et seq.* Together, the Unions represent over 100,000 rail employees working in a wide variety of crafts and classes for 30 rail carriers, including the rail carrier Defendants, represented in ongoing collective bargaining with the Defendant National Railway Labor Conference ("NRLC") through its National Carriers Conference Committee ("NCCC").

2.     In this action, the Unions seek a declaratory judgment with respect to the carriers' obligations to bargain with the Plaintiff Unions over mandatory subjects of bargaining in the ongoing round of collective bargaining.  The Unions also seek a declaratory judgment and injunctive relief with respect to the NRLC's insistence that certain mandatory subjects of bargaining be dealt with outside of the bargaining process in clear violation of the mandatory major dispute resolution provisions of the RLA, 45 U.S.C. § 151, *et seq.*

## THE PARTIES

3.      Plaintiff American Train Dispatchers Association ("ATDA") is an unincorporated labor organization which represents rail employees in the craft or class of train dispatchers.  ATDA is headquartered in Cleveland, Ohio.  ATDA is represented in the current round of collective bargaining with the NRLC by a coalition of Unions known as the Coordinating Bargaining Coalition ("CBC").   ATDA is also a participating organization in the Cooperating Railway Labor Organizations ("CRLO"), an umbrella organization which jointly administers with the NRLC the National Railroad Employees Health and Welfare Plan, which provides collectively bargained health care benefits to rail employees and their families.  ATDA's President F. Leo McCann is the elected Secretary-Treasurer of the CRLO.

4.      Plaintiff Brotherhood of Locomotive Engineers and Trainmen, a Division of the Rail Conference of the International Brotherhood of Teamsters ("BLET") is an unincorporated labor organization which represents, among others, rail employees in the craft or class of locomotive engineers.  BLET is headquartered in Independence, Ohio.  BLET is represented in the current round of collective bargaining with the NRLC by the CBC.  BLET is also a participating organization in the CRLO and BLET National President Dennis Pierce is currently the CRLO's elected Chairman.

5.      Plaintiff Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") is an unincorporated labor organization which represents rail employees in the craft or class of maintenance of way employees.  BMWED is headquartered in Southfield, Michigan.  On behalf of the

employees it represents who are employed by many of the carriers who are NRLC members, or who have designated NCCC as their agent for bargaining, BMWED is bargaining this round in a coalition with SMART-Mechanical. BMWED is a participating organization in the CRLO.

6.     Plaintiff International Brotherhood of Boilermakers ("IBB") is an unincorporated labor organization which represents rail employees in the craft or class of boilermakers/blacksmiths. IBB is headquartered in Kansas City, Kansas. IBB is represented in the current round of collective bargaining with the NRLC by the CBC. IBB is also a member of the CRLO.

7.     Plaintiff Brotherhood Railroad Signalmen ("BRS") is an unincorporated labor organization which represents rail employees in the craft or class of signalman. BRS is headquartered in Front Royal, Virginia. BRS is represented in the current round of collective bargaining with the NRLC by the CBC. BRS is also a member of the CRLO.

8.     Plaintiff International Association of Machinists and Aerospace Workers is an unincorporated labor organization which represents rail employees in the craft or class of machinists. IAM is headquartered in Upper Marlboro, Maryland. It also has offices in Washington, D.C. IAM is represented in the current round of collective bargaining with the NRLC by the CBC. IAM is also a member of the CRLO.

9.     Plaintiff International Association of Sheet Metal, Air, Rail and Transportation Workers, Mechanical Division ("SMART-Mechanical") is an unincorporated labor organization who represents rail employees in the craft or class of sheet metal workers. SMART-Mechanical is headquartered in Washington, D.C.

SMART-Mechanical is bargaining this round in a coalition with BMWED.   SMART-Mechanical is a participating organization in the CRLO.

10.   Plaintiff International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division ("SMART-TD") is an unincorporated labor organization who represents rail employees in the craft or class of train and engine service.   SMART-TD is headquartered in North Olmstead, Ohio.   SMART-TD is represented in the current round of collective bargaining with the NRLC by the CBC. While SMART-TD participates in the National Plan, it also participates in its own collectively bargained Health and Welfare Plan, which is also Jointly Administered with the NRLC.

11.   Plaintiff International Brotherhood of Electrical Workers ("IBEW") is an unincorporated labor organization which represents electrical workers in the railroad industry.  The IBEW is headquartered in Washington, D.C.  The IBEW is represented in the current round of collective bargaining with the NRLC by the CBC.  IBEW is also a member of the CRLO.

12.   Plaintiff National Conference of Fireman & Oilers District, Local 32BJ, SEIU ("NCFO") is an unincorporated labor organization which represents rail employees in the craft or class of shop laborers.    NCFO is headquartered in Ashland, Kentucky. NCFO is represented in the current round of collective bargaining with the NRLC by the CBC.  NCFO is also a member of the CRLO.

13.   Plaintiff Transportation Communications Union/IAM ("TCU/IAM") is an unincorporated labor organization who represents rail employees in the craft or class of

carmen and the craft or class of clerks.  TCU/IAM is headquartered in Rockville, Maryland.

TCU/IAM is represented in the current round of collective bargaining with the NRLC by

the CBC.  TCU/IAM is also a member of the CRLO.  Until his retirement effective August

1, 2020, the TCU/IAM's National President served as the elected Chairman of the CRLO.

The current TCU/IAM National President, Arthur Maratea, serves as the Vice Chairman

of the CRLO.

14.     Plaintiff Transport Workers Union ("TWU") is an unincorporated labor

organization which represents rail employees in the craft or class of carmen.  TWU is

headquartered in Washington, D.C. The TWU is represented in the current round of

collective bargaining with the NRLC by the CBC.  TWU is also a member of the CRLO.

15.     Defendant National Railway Labor Conference ("NRLC") is an

unincorporated association of railroads that represents its member railroads with respect to

labor relations matters nationwide.  A committee of the NRLC, known as the National

Carriers' Conference Committee ("NCCC") is the designated bargaining agent of the

Defendant  railroads and other railroads, who are all "carriers" under the RLA, 45 U.S.C.

§ 151, First, in multi-employer collective bargaining with rail unions under the RLA.  The

NRLC was headquartered in Washington, D.C. for decades years, until its recent relocation

to Arlington, Virginia.  The carriers represented in bargaining by the NRLC through the

NCCC include: Alton & Southern Railway Company, The Belt Railway Company of

Chicago, Bessemer and Lake Erie Railroad Company, BNSF Railway Company,

Brownsville and Matamoros Bridge Company, Central California Traction Company,

Consolidated Rail Corporation, CSX Transportation, Inc., Grand Trunk Western Railroad

Company, Illinois Central Railroad Company, Indiana Harbor Belt Railroad Company, The Kansas City Southern Railway Company, Kansas City Terminal Railway Company, Longview Switching Company, Los Angeles Junction Railway Company, New Orleans Public Belt Railroad, Norfolk Southern Corporation, Norfolk and Portsmouth Belt Line, Northeast Illinois Regional Commuter Railroad Corporation (METRA), Northern Indiana Commuter Transportation District, Port Terminal Railroad Association, Portland Terminal Railroad Company, Terminal Railroad Association of St. Louis, Union Pacific Railroad Company, Union Railroad Company, Western Fruit Express Company, Wichita Terminal Association, Winston-Salem Southbound Railway Company, Wisconsin Central Ltd., Soo Line Railroad Company.

16.    Defendant BNSF Railway Company ("BNSF") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  BNSF is headquartered in Fort Worth, Texas.  BNSF is a member of the NRLC and NCCC.  The NRLC, through its NCCC, is representing BNSF as its bargaining agent in the current round of collective bargaining with Unions.   BNSF has an office in the District of Columbia and does business in the District.

17.    Defendant Kansas City Southern Railway Company ("KCS") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  KCS is headquartered in Kansas City, Missouri. KCS is a member of the NRLC and NCCC.  The NRLC, through its NCCC, is representing KCS as its bargaining agent in the current round of collective bargaining with Unions.  The KCS does business in the District.

18.    Defendant CSX Transportation ("CSX") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  CSX is headquartered in Jacksonville, Florida.  CSX is a member

of the NRLC and NCCC.  The NRLC, through its NCCC, is representing CSX as its bargaining agent in the current round of collective bargaining with Unions.  CSX does business in the District and has an office in the District.

19.     Defendant Grand Trunk Western Railroad Company ("Grand Trunk") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  Grand Trunk is an American subsidy of Canadian National Railway.  Grand Trunk is headquartered in Homewood, Illinois. Grand Trunk is a member of the NRLC and NCCC.  The NRLC, through its NCCC, is representing Grand Trunk as its bargaining agent in the current round of collective bargaining with Unions.  Grand Trunk does business in the District.

20.     Defendant Norfolk Southern Railway Company ("NS") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  NS is headquartered in Norfolk, Virginia.  NS is a member of the NRLC and NCCC.  The NRLC, through its NCCC, is representing NS as its bargaining agent in the current round of collective bargaining with Unions.  NS does business in the District and has an office in the District.

21.     Defendant Soo Line Railway Company ("Soo Line") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.  It is a subsidy of Canadian Pacific Railroad.  Soo Line is headquartered in Minneapolis, Minnesota. The NCCC is representing Soo Line as its bargaining agent in the current round of collective bargaining with Unions.  Soo Line does business in the District.

22.     Defendant Union Pacific Railway Company ("UP") is a carrier as defined in the RLA, 45 U.S.C. § 151, First.   UP is headquartered in Omaha, Nebraska.  UP is a member of the NRLC and NCCC.  The NRLC, through its NCCC, is representing UP as

its bargaining agent in the current round of collective bargaining with Unions.  UP has an office in the District and does business in the District.

## JURISDICTION AND VENUE

23.     This action arises under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and the Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337 over this dispute concerning a contract made under federal law affecting interstate commerce. This case presents an actual controversy arising under 45 U.S.C. § 151, *et seq.*, within the jurisdiction of the Court pursuant to 28 U.S.C. § 2201(a).  This Court possesses jurisdiction to enforce the parties' obligations under the RLA and to issue an order for declaratory and injunctive relief over Defendant's obligations to bargain in good faith over mandatory subjects of collective bargaining through the "major dispute" mechanisms of the RLA for changing the terms of a collective bargaining agreement.

24.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c), and the Court has personal jurisdiction over Defendant NRLC, which regularly does business in the District, is engaged in collective bargaining impacting the rights of employees residing in the District, has entered into legally-binding contracts with the parties in the District, and resided in the District for decades until a recent move to Arlington, Virginia. Additionally, the Plaintiff Unions represent employees in the District impacted by this round of collective bargaining in participating in the health and welfare plans in dispute here and Plaintiffs IBEW, TWU and SMART-Mechanical reside in the District.  All rail carrier Defendants engage in business in the District, including through their bargaining agent, NRLC and its NCCC.

## BACKGROUND

25.     The Railway Labor Act ("RLA" or "Act") governs the collective bargaining relationship between rail carriers and the labor unions representing the carriers' employees over rates of pay, rules, and working conditions.  45 U.S.C. § 151, *et seq.*

26.     The RLA establishes an elaborate machinery for the negotiation, mediation, and conciliation of collective bargaining agreements. Under the RLA, contracts do not expire but rather become "amendable," meaning they remain in effect until modified by the parties.   The negotiation process under the RLA begins with notice and direct bargaining.   45 U.S.C. § 156.  This is known as the "Section 6" process due to the applicable provision of the Act.  A party's Section 6 Notice sets forth its proposed contract terms, to which the other party may respond by serving its own counterproposal Section 6 Notice.   These proposals must be negotiated in conference between representatives designated and authorized by the carrier or carriers and by employees thereof interested in the dispute.  45 U.S.C. §§ 152, Second, 156.  If conferences fail, the dispute is subject to mediation by the National Mediation Board ("NMB").  45 U.S.C. § 155, First.  If mediation fails, the President of the United States may appoint a Presidential Emergency Board ("PEB") to investigate the dispute and make recommendations for settlement.  45 U.S.C. § 160.  The last freight rail PEB was PEB 243, which was convened in 2011.

27.     Until the RLA's procedures are exhausted, and for 30 days thereafter, parties must maintain the status quo established by previous agreements and may not resort to self-help over the dispute.  45 U.S.C. §§ 156, 155 First, 160.

28.     The parties here are in a dispute subject to Section 6 of the RLA over health and welfare changes to their collective bargaining agreements. This is a "major dispute" under the RLA.

29.     Since the 1930s, most of the national freight carriers have engaged in multiemployer collective bargaining negotiations. Since 1968, nearly all of the Class I freight carriers and many smaller regional and terminal railroads have been represented in national bargaining by the NRLC, through its NCCC.  The NCCC is comprised of permanent full-time employees of the NRLC and bargaining is led by the NRLC Chairman Brendan M. Branon.  The NCCC, is the designated bargaining agent for its carrier members and for carriers that designate NCCC to represent them; NCCC negotiates and executes amendments to the collective bargaining agreements on behalf of the carriers whom it represents.

30.     There are 12 major rail unions currently engaged in the Section 6 process with the NLRC, through the NCCC, all of whom are named as Plaintiffs in this action. Bargaining is done directly between the NRLC carriers and other carriers, through the NCCC, and the individual unions through a process known as "national handling."   In this round of bargaining, the Unions have formed into two different bargaining coalitions for national handling, but any agreements ultimately reached through national handling are directly between the NCCC and the individual unions and subject to the membership ratification procedures for that individual union.

31.     The current collective bargaining agreements between the carriers, including the rail carrier Defendants, and Plaintiff Unions, became amendable on January 1, 2020.

In accordance with the procedures outlined in the RLA, on November 1, 2019, NRLC Chairman Branon, served essentially identical Section 6 Notices on each of the individual Unions outlining the carriers' proposed amendments to the existing collecting bargaining agreements, including proposals to substantially diminish current health and welfare insurance coverage for their employees.

32.     As in every past round of collective bargaining, health care is a contentious issue this round and the NRLC seeks to make major changes to The Railroad Employees National Health and Welfare Plan, GA-23000 ("National Plan"), which covers approximately 70% of rail employees working for NRLC-represented carriers including employees represented by all of the Plaintiff Unions.   A similar proposal was made to SMART-TD, who also represents employees under a similar but separate health care plan ("SMART-TD Plan") covering approximately 30% of the rail union employees working for NRLC-represented carriers.

33.     The National Plan is a wholly self-insured, Administrative Services Only ("ASO") arrangement overseen by a Joint Plan Committee. The National Plan provides for labor and management, as the Joint Policyholders, to oversee the National Plan jointly. The Chairmen of the CRLO and the NRLC represent labor and management, respectively, on the Joint Plan Committee ("JPC").   As the NRLC Chairman, Mr. Branon represents the participating carriers on the JPC.   The Plan is funded through a Trust jointly administered by the JPC, as Trustees, and subject to the laws of the District.

34.     In 1991, what was formerly known as the Joint Policyholder Committee for the National Plan, was renamed the Joint Plan Committee.   While the functions and

responsibilities of the committee did not change, as made express in the 1991 agreements, following the recommendations of Presidential Emergency Board ("PEB") 219, the parties agreed to retain a neutral at the Plan's expense to break any deadlocks "arising out of the interpretation, application or administration (including investment policy) of the Plan Committee."

35.     The CRLO is an umbrella labor organization made up of participating rail labor organizations.  Under the CRLO's Constitution/Bylaws dated November 8, 1991, the CRLO "represent[s] the interests of the participating organizations on the Joint Plan Committee established by the National Agreement."  The participating organizations on the CRLO and in the National Plan, which include all of the Plaintiff Unions, are represented on the CRLO by their "chief executive officer" or their designated representative.  The CRLO's Constitution/Bylaws specifically provides that "the CRLO does not have authority to bind the participating organizations in national bargaining" and that "[e]ach participating organization retains its right to accept or reject any national proposals regarding health and welfare."

36.     Additionally, SMART-TD also participates in its own Plan which is similarly jointly administered with the NRLC through the Governing Committee.  In the late 1990s, SMART-TD (formerly the United Transportation Union or "UTU") and the NRLC agreed to break away from the National Plan and form a separate health and welfare benefit plan covering only UTU-represented employees and their dependents. The new plan was called The National Railway Carriers and United Transportation Union Health and Welfare Plan or "UTU Plan," now "SMART-TD Plan" for short.  Like the National Plan, it is a wholly

self-insured, Administrative Services Only (ASO) arrangement overseen by joint policyholders, SMART-TD and the NRLC.  While a separate plan, the SMART-TD Plan has many similar features to the National Plan and a similar Joint Policyholder structure under their Governing Committee.

37.     The National Plan, and later the SMART-TD Plan, has evolved over nearly 70 years of collective bargaining between management and labor and is designed to meet the unique needs of railroad employees.  Affordable and comprehensive health care for railroad employees, who are statistically at higher risk of illness or injury than the general population, has always been a priority of the Unions.  Over the years, the Unions have had to give up other items in bargaining as "quid pro quo"-- including accepting lower wage increases or changes in work rules -- in order to achieve the current level of health care benefits.  Plan design issues, including negotiating restrictions on prescription drugs or network changes, have been consistently addressed through the collective bargaining process over the years, including the last several round of negotiations.

## **PRESENT ROUND OF BARGAINING**

38.     On November 1, 2019, in accordance with the procedures outlined in the RLA, NRLC Chairman Branon served virtually identical Section 6 Notices on the Unions outlining the amendments to the collective bargaining agreements which the carriers, including rail carrier Defendants, hoped to achieve this round of bargaining.  Among numerous other proposed changes, the NRLC proposed identical changes to the National Plan and SMART-TD Plan.  The NRLC's Section 6 Notice said that "the railroads seek to modernize the health care plans' design and administrative practices," including to:

- Adopt all pharmacy management rules and programs to ensure appropriate medications are being prescribed.

- Reconfigure the medical vendor network to utilize networks with favorable provider discounts and overall cost of care.

39.     Just a few days later, on November 9, 2019, the NRLC emailed the CRLO to raise three proposed changes to the National Plan for consideration of the JPC – which is comprised of representatives from both the NRLC and CRLO.  The first issue involved a change to National Plan benefits to add additional Gender Dysphoria coverage, the second proposed change involved an increase travel benefits for participants traveling to the Cleveland Clinic, and the third proposed change involved adopting Express Scripts' "Advanced Opioid Management" Program.  Similar requests were sent at this time to SMART-TD as well.

40.     Although lacking in specific details, the Advanced Opioid Management Program proposal would, among other things, limit prescription amounts, dosages and permissible usage, require prior authorizations, and limit the locations where a prescription could be filled by a patient.

41.     Starting in November 2019, pursuant to the RLA, the Unions served their Section 6 Notices on the carriers outlining their proposed amendments to the current collective bargaining agreements, which include numerous enhancements to the current health and welfare benefits.

42.     On December 4, 2019, the then CRLO Chairman, who was also the National President of the TCU/IAM, Robert Scardelletti sent a letter to the other CRLO Labor representatives of each of the participating Unions regarding the NRLC's proposal to the

18

JPC about the three National Plan changes. CRLO Chairman Scardelletti recommended that the CRLO agree to the first two proposals involving Gender Dysphoria coverage, which was to become compliant with the changing law in this area, and increased travel benefits for travel to the Cleveland Clinic, which arose during negotiations with the National Plan's pending contract with the Cleveland Clinic.

43.    Regarding the NRLC's proposal to adopt Express Scripts' Advanced Opioid Management Program, CRLO Chairman Scardelletti noted in his December 4, 2019 letter that "during the last round of negotiations, the parties agreed to Express Scripts' Fraud, Waste and Abuse program" and that this new proposed program would adopt even greater restrictions on employees' access to opioid medication including restricting the amount, dosage, authorization and use of opioids for certain medical purposes and where a patient could fill a prescription.  CRLO Chairman Scardelletti advised the Unions in his December 4, 2019 letter:

> [T]he CRLO subcommittee has reviewed the above proposals and although the members had no objections to the Plan enhancements for the Gender Dysphoria Coverage and the Cleveland Clinic travel per diem benefits, the group felt that the implementation of the full Express Scripts' Opioid Management Program may have a large impact on the membership. Therefore, the members felt that further information was warranted. As such, it was recommended that Express Scripts be requested to present further details on the program to Labor during the CRLO [February 2020] winter meetings in Florida.

44.    The CRLO Unions met about the matter and agreed with the CRLO's subcommittee's recommendation as outlined in Chairman Scardelletti's December 4, 2019 letter.

45.     Accordingly, on December 16, 2019, the CRLO sent a letter to the NRLC explaining that the CRLO agreed with the proposals regarding Gender Dysphoria coverage and Cleveland Clinic travel benefits; however, as to the Express Scripts Opioid Management Program, the CRLO explained that "further information is warranted before making a determination on this program" and advised that Labor will be meeting in early February 2020 with Express Scripts to obtain further detail about the program.

46.     On January 2, 2020, the NRLC responded to the CRLO's letter expressing disappointment with the CRLO's decision to educate itself further on the NRLC's recent proposal regarding the Opioid Management Program, stating that the program should be adopted immediately without "further delay."

47.     The next day, the CRLO responded to the NRLC's January 2, 2020 letter, stating that it had a right to further information on the proposed change, which was first raised in November, and had only received a high-level overview to date.  The CRLO went on to explain:

> The fact the CRLO Chiefs want to be adequately informed is not a delay. It is the opposite, having Express Scripts present the program allows the CRLO Chiefs the ability to make an educated decision on what the actual impact will be at the member, provider and Plan cost levels. Education of both co-plan sponsors is viewed as being significant in making any Plan decision, whether it's the implementation of this AOM program or another program.

48.     The same day, SMART-TD, who had received the same request from NRLC regarding adopting these three changes to the SMART-TD Plan, sent a letter to the NRLC agreeing with the CRLO's January 2, 2020 letter and adopting the same position.

49.     On January 14, 2020, the BMWED/SMART-Mechanical coalition conferenced with the NRLC to discuss their Section 6 Notices that are in national handling and to start the bargaining process. While other bargaining sessions were scheduled at this meeting, they were delayed due to the COVID pandemic.

50.     On February 5, 2020, representatives from the CRLO met with Express Script to discuss its Advanced Opioid Management Program.  After the presentation, the CRLO Labor representatives met to discuss the proposal.  They concluded that the presentation left many unanswered questions and would be taking away benefits currently in place under the current collective bargaining agreements, which were voted on and adopted by the membership during the last round of national handling.  They also maintained that the membership had a right to vote on this decrease in benefits through the collective bargaining process.

51.     On February 14, 2020, the CRLO advised the NRLC that it was not willing to agree to Express Scripts' Advanced Opioid Management Program through the JPC process and that "this program is a bargaining issue and needs to be addressed during national negotiations."

52.     By February 2020, all of the Plaintiff Unions with the exception of the BMWED and SMART-Mechanical, who were bargaining as a separate coalition, had formed a labor bargaining coalition, known as the CBC.  On February 26, 2020, the CBC Unions conferenced with the NRLC to discuss its economic bargaining proposals. While other bargaining sessions were scheduled at this time, they were delayed due to the COVID pandemic.

53.     On April 15, 2020, the BMWED/SMART-Mechanical coalition had a meeting by video conference with the NCCC during which the NCCC made a presentation regarding the carriers' proposed health and welfare changes.   Although no further bargaining sessions had taken place at this point, the NCCC also emailed the BMWED/SMART-Mechanical their health and welfare PowerPoint presentations on May 22, 2020 and June 25, 2020.  In the carriers' presentations from April, May and June 2020, the carriers indicated on its presentation materials that it reserved the right to address some aspects of their health and welfare proposals through the JPC.

54.     On July 7, 2020, representatives from the CRLO and SMART-TD had a call with the NRLC, at its request, where the NRLC raised for the first time its new proposal to the JPC to reconfigure the two Plans' provider networks.  The NRLC also advised at this time that they wished to put the Advanced Opioid Management Program back on the table. Later that same day, the NRLC emailed the CRLO a copy of its proposed network changes.

55.     On July 13, 2020, the CRLO sent another letter to the NRLC emphasizing their position, as made clear in their February 14, 2020 letter that the opioid management issue should be addressed during national negotiations, noting that the "very topic of the opioid management program was extensively bargained over during the last round with no resolution reached."  The letter went on to state that "based on long standing history since 1991, changes to the Plan's networks have been a matter of collective bargaining," and are being sought by the NRLC in the current round of bargaining.  The CRLO also emphasized that "Plan drug rules and network reconfigurations were extensively a part of the last round with no agreed upon resolution reach" and should remain in national bargaining.

56.     By letter to the NRLC dated July 15, 2020, the SMART-TD agreed with the CRLO's July 13, 2020 letter, stating "[i]n short, these matters have historically and appropriately been a matter of collective bargaining, and the NRLC's inclusion of these topics in its most recent Section 6 notices is the proper avenue for seeking a mutual agreement between the parties."

57.     On July 28, 2020, the CBC Unions conducted another bargaining session with the NRLC by videoconferencing, during which the NRLC made a PowerPoint presentation on its Section 6 Notice proposals, including its desire to make extensive health and welfare changes.  Along with many other proposed changes, the NRLC proposed reconfiguring the current network and adopting Express Scripts' Advanced Opioid Management program.  At the bottom of the NRLC's PowerPoint presentation, the NRLC stated "some changes [c]an be addressed through Joint Plan administration outside of bargaining."

58.     The same day, on July 28, 2020, the NRLC sent identical letters in response to the CRLO and SMART-TD, challenging the Unions' assertion that the Advanced Opioid Management Program and network configuration issues are bargaining issues and trying to force the Unions, through their role on the JPC and Governing Committee, to adopt their proposals through the Plan Administration process claiming, without any support, that their failure to do so violated their fiduciary duty to the Plans.  The NRLC threatened further "action" if the Unions refused.  The NRLC also argued for the first time that these Plan design changes – which involved amending the existing Plans and Policies were in fact

somehow "administrative" in nature and, therefore, subject to the binding arbitration provisions of the JPC and Governing Committee.

59.     Prior to this present dispute, the JPC has always implemented changes by consensus. When there was disagreement within the Committee, it usually involved skepticism over whether a proposed change would effectively accomplish its intended purpose without adversely affecting other, equally important National Plan objectives. These are the kinds of policy questions over which healthcare experts can and do disagree. In the past, the Joint Policyholders awaited the development of better information and the emergence of consensus before making decisions that could damage the National Plan or hurt its participants and beneficiaries believing that National Plan design issues rarely, if ever, present an emergency requiring immediate resolution.  This was also true for the Governing Committee of the SMART-TD Plan.

60.     The Unions and NRLC have consistently agreed that the neutral arbitration procedure in the 1991 National Agreement to break deadlocks in the JPC has no application to National Plan design or other settlor decisions.   In fact, prior to Mr. Branon's letter of July 28, 2020, the NRLC had never before taken the position that National Plan design functions are subject to the deadlock/arbitration process of the Plan.

61.     In fact, the NRLC has publicly disavowed the very position they are taking here.  In 2011, the parties were unable to resolve their collective bargaining dispute after direct bargaining and invoking the NMB's mediation services and, ultimately, the matter was referred to a Presidential Emergency Board (PEB 243) in accordance with the major dispute procedures outlined in the RLA.   PEB 243 was charged with making

recommendations for the resolution of the parties' dispute.  During that round of bargaining, as with the current round, health and welfare issues dominated bargaining. During proceedings before PEB 243, the NRLC's former long-time counsel, Benjamin Boley, served as its chief health and welfare witness and testified about the role of the JPC and its deadlock provision.  Mr. Boley emphasized that the JPC makes decisions by consensus and that the deadlock provisions had never been used.  When asked by PEB 243 Board Member Joshua Javits during the proceedings whether plan design changes like the ones proposed by the NRLC to the Board could be resolved through the JPC, Mr. Boley emphasized in his testimony that labor and management on the JPC can amend the Plan by mutually agreeing, but "unless you can get an agreement you won't get an amendment because the neutral cannot determine whether the plan should be amended."  Mr. Boley went on to emphasize that because the JPC is comprised of the same parties as at the bargaining table that, "[i]f we can't get them to agree in collective bargaining, you're not going to get them to agree representing the labor organizations in discussions of the Joint Plan Committee."  To date, the JPC's arbitration provisions have never been invoked.

62.     The NRLC's unprecedented position here is a gross misuse of the JPC and Governing Committee processes and is nothing short of a thinly veiled attempt to circumvent the collective bargaining process and their obligation to engage in good faith bargaining in violation of the "major dispute" provisions of the Railway Labor Act.

## COUNT 1: VIOLATION OF THE RLA

63.     The allegations in paragraphs 1 through 62 are incorporated by reference as if set forth in full herein.

64.     Section 2, First of the RLA, 45 U.S.C. § 152, First, requires that carriers, including their officers, employees and agents, "exert every reasonable effort to make and maintain agreements."

65.     Section 2, Seventh, of the RLA, 45 U.S.C. § 152, Seventh, mandates that "[n]o carrier, its officers, or agents shall change the rates of pay, rules or working conditions of its employees, as a class, as embodied in agreements *except* in the manner prescribed in such agreements or in Section 156 of this [Act]."  (emphasis added).

66.     Section 6 of the RLA, 45 U.S.C. § 156, mandates that "rates of pay, rules or working conditions shall not be altered by the carrier" until exhaustion of various stages of the collective bargaining process under the RLA.

67.     The NRLC, through the NCCC, serves as the legal bargaining agent for its rail carrier members and carriers that have designated the NCCC as their bargaining agent, including rail carrier Defendants, as well as the rail carriers' representatives on the JPC. The NRLC's expressed intention to force the Unions to bargain over these proposed health and welfare changes outside of the Section 6 process and in the JPC- and Governing Committee-context is contrary to the RLA and its duty to bargain in good faith with the Unions as the bargaining representative of its rail carrier members.

68.     The Plaintiff Unions are entitled to judgment under 28 U.S.C. § 2201(a) declaring that the NRLC is in violation of its obligations as the carriers' bargaining agent and JPC and Governing Committee representative, by insisting that these health and welfare changes be handled outside of the bargaining context.

## **REQUEST FOR RELIEF**

For all of the reasons stated above, the Plaintiffs respectfully request that the Court:

(a)     Issue a declaratory judgment that the Defendant carriers, and the  NRLC on behalf of its rail carrier members represented in bargaining are obligated to bargain in good faith with the Unions on the proposed health and welfare changes in accordance with the collective bargaining procedures outlined under the RLA;

(b)     Issue a declaratory judgment declaring that health and welfare plan design changes are a mandatory subject of collective bargaining pursuant to the RLA;

(c)     Issue a declaratory judgment that Defendant NRLC may not force plan design changes upon its employees without the agreement of Plaintiffs to be achieved through the mandatory dispute resolution process of the RLA;

(d)     Issue an order enjoining the NRLC from trying to force these health and welfare changes in the JPC-context and Governing Committee-context rather than addressing them in collective bargaining;

(e)     Issue an order requiring the NRLC to engage in good faith negotiations on behalf of its rail carrier members with the Unions over their proposed health and welfare changes through the RLA's major dispute resolution procedures;

(f)     Grant such other and further relief as the Court seems just and equitable.


Dated: August 5, 2020                    Respectfully Submitted,

                                       /s/ *Elizabeth Roma*
                                       Joseph Guerrieri, Jr. (DC Bar No. 165555)
                                       Elizabeth Roma (DC Bar No. 494679)
                                       John Grunert (DC Bar No. 1019791)

Guerrieri, Bartos & Roma, PC
1900 M Street, NW, Suite 700
Washington, DC  20036
Tel: (202) 624-7400
Fax: (202) 624-7420
jguerrieri@geclaw.com
eroma@geclaw.com
jgrunert@geclaw.com

*Counsel for Plaintiff Unions*